# IRON SILVER MINING COMPANY *v.* REYNOLDS.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF COLORADO.

Submitted January 4, 1888. — Decided January 23, 1888.

Plaintiff's complaint alleged that he was owner and in possession of a tract of mining land described by metes and bounds and known as the Wells and Moyer placer claim, and that while he was thus owner and possessor defendant entered upon a portion of it and wrongfully ousted him therefrom. Defendant denied these allegations and set up that at the times named he was owner and in possession of two lode mining claims known as the Crown Point and the Pinnacle lodes, and that in working and following them he entered underneath the exterior surface lines of the placer claim, and had not otherwise ousted plaintiff, and that these two lodes were known to exist at the time of the application for plaintiff's patent, and were not included in it. Plaintiff's replication traversed these defences, and further set up that at the times named he was owner, and in possession, of two claims known as the Rock lode and the Dome lode, immediately adjoining the Crown Point and Pinnacle lodes, and that within their boundaries there was a mineral vein or lode, which, in its dip, entered the ground covered by those claims, and that any portion of any vein or lode, developed underneath the surface of the Crown Point and Pinnacle lodes, was part of the Rock and Dome lodes. On these pleadings plaintiff at the trial, in addition to the patent of the placer claim, which was admitted without objection, offered in evidence a patent for the Rock and Dome lodes, and a deed of them to him, to show that the lode which, since the issue of the patent for the placer claim, had been ascertained to dip into the boundaries of that claim, had its apex within the boundaries of those lode claims. The court refused to admit this evidence. *Held*, that this was error, as the facts thus offered to be proved, if established, would force defendant from his position of

intruder without title, and compel him to show prior title to the premises in himself, or to surrender them to plaintiff.

On the trial of an issue whether the applicant for a patent of a placer claim knew at the time of the application that there was also a vein or lode included within the boundaries, within the meaning of Rev. Stat. § 2322, an instruction to the jury that " if it appear that an application for a patent was made with *intent* to acquire a lode or vein which *may* exist in the ground beneath the surface of a placer claim, a patent issued upon such application cannot operate to convey such lode or vein," and that " that intention could be formed only upon investigation as to the character of the ground and the belief as to the existence of a valuable lode therein, which would amount to knowledge under the statute," is erroneous.

THE court stated the case as follows :

This is an action for the possession of certain mining ground situated in what is known as the California mining district, in Lake County, Colorado.   The plaintiff is a corporation created under the laws of New York.   The defendant Reynolds is a citizen of the State of Illinois, and the defendant Morrisey is a citizen of Colorado.   The complaint alleges that on the 1st of January, 1884, the plaintiff was the owner and possessed of a tract of mining land in the mining district and county of Colorado mentioned, consisting of $193\frac{43}{100}$ acres, more or less, the metes and bounds of which are given as described in the patent of the United States issued therefor ; that whilst thus the owner and possessed of the same, and on the 1st of May, 1884, the defendants entered upon a portion of the said mining land, which is designated as " the northwest portion of the said described premises at and near the north and east line " thereof, and wrongfully and unlawfully ousted the plaintiff therefrom, and from that time have wrongfully and unlawfully withheld the possession thereof ; that the value of this portion of the mining land, from which the plaintiff has been ousted, is over $50,000 ; and that its rents and profits whilst the defendants have held possession, with the damage caused by them, are $10,000.   The plaintiff, therefore, demands judgment for the possession of the premises and for the sum of $10,000 damages.   The claim described in the complaint is designated in the patent of the United States as the Wells and Moyer placer

claim, and is thus described in the subsequent pleadings and proceedings of the case.

The defendants' answer sets up three defences:

1. The first consists of a specific denial of the several allegations of the complaint.

2. The second is this, that at the times charged in the complaint the defendant Reynolds was, and still is, the owner and in the actual possession of two lode mining claims called respectively the Crown Point lode and the Pinnacle lode, adjoining on the north the Wells and Moyer placer claim, the veins of which lodes, in their course downward, dip into and underneath the exterior lines of the placer claim; and that in working and following such veins the defendant Reynolds, as owner, and the defendant Morrisey, under the license of Reynolds, entered underneath the exterior surface lines of the placer claim, following the veins as parcel of the premises embraced in the survey of their lode claims, and have not otherwise entered upon the premises described or claimed by the plaintiff, or ousted the plaintiff therefrom.

3. The third defence is this, that, at the time of the survey, entry, and patent of the said Wells and Moyer placer claim, a certain lode, vein or deposit of quartz, or other rock in place, carrying carbonates of lead and silver-bearing ore of great value, called the Pinnacle lode, and a certain other lode, vein or deposit, carrying like minerals of great value, called the Crown Point lode, were known and claimed to exist within the boundaries and underneath the surface of the placer claim described in the complaint, and the fact that such vein or veins were claimed to exist, and did exist, within said premises was known to the patentees of the placer claim at the times mentioned, and that in their application for a patent they were not included, but, by the patent issued upon such application, were expressly excluded therefrom.

To the answer the plaintiff replied traversing the defences set up, and, for a further replication, alleged, that at all times charged in the answer of the defendants, it has been and still is the owner, and in actual possession of the Rock lode mining claim, and the Dome lode mining claim, which adjoin, imme-

diately on the north side, the said Pinnacle and Crown Point mining claims, and that within their exterior boundaries there is a vein, lode, lead, and valuable mining deposit of quartz, and other rock in place, bearing silver and lead, which, on its dip and downward course, enters into and underlies the land adjoining, a portion of which consists of ground covered by the said Crown Point and Pinnacle lode mining claims; and that any portion or part of any vein, lode, lead, or valuable mineral deposit which is found or developed underneath the surface of the Crown Point and Pinnacle lode claims is a part and portion of the said Rock and Dome lodes, veins, and mineral deposits.

This action was twice tried by the Circuit Court. On the first trial the plaintiff below, which is also the plaintiff in error here, obtained a verdict in its favor. Being brought to this court the judgment was reversed and the cause remanded for a new trial. The case is reported in 116 U. S. 687.

On the present trial, to establish its title, the plaintiff gave in evidence:

1. Three location certificates of the Wells and Moyer placer claim, made on the 23d of March, 1878.

2. A certificate showing application for a patent May 16, 1878.

3. A certificate of entry issued July 22, 1878.

4. The patent to Wells and Moyer from the United States, dated March 11, 1879, which contained the following conditions:

First. That the grant was restricted within the boundaries described, and to any veins or lodes of quartz or other rock in place bearing gold, silver, cinnabar, lead, tin, copper, or other valuable deposits thereafter discovered within those limits and which were not claimed or known to exist at the date of the patent.

Second. That should any vein or lode of quartz or other rock in place bearing gold, silver, cinnabar, lead, tin, copper, or other valuable deposits be claimed or known to exist within the above described premises at the date of the patent, the same were expressly excepted and excluded from it.

Third. That the premises conveyed might be entered by the proprietors of any vein or lode of quartz or other rock in place bearing gold, silver, cinnabar, lead, tin, copper, or other valuable deposits, for the purpose of extracting and removing the ore from such vein, lode or deposit, should the same or any part thereof be found to penetrate, intersect, pass through, or dip into the mining ground or premises granted.

5. Deeds of conveyance from Wells and Moyer, the placer patentees, to Storms and Leiter, dated October, 1878, and from the latter to the plaintiff, dated March, 1880.

The plaintiff then offered in evidence a patent of the United States for the Rock and Dome lode mining claims, and deeds conveying the title thereof from the patentees to the Iron Silver Mining Company, for the purpose of showing that the lode, which, since the issue of the Wells and Moyer placer patent, has been ascertained to dip into and extend within the boundaries of the patented claim, has its top, apex, and outcrop within the Rock and Dome lode mining claims; and of tracing the right to that vein or lode from its top, apex, or outcrop into the territory in dispute in this action.

The introduction of this evidence was objected to by the defendants on the ground that there was no issue of the kind in the pleadings, and the objection was sustained by the court, to which ruling the plaintiff excepted.

On the trial the defendants, though they gave in evidence their title to the Crown Point and Pinnacle lodes, admitted that they did not rely, in support of their title to the premises in controversy, upon the existence of any apex cropping out within the surface lines of the said lodes, which they could lawfully pursue and hold under their patents. The case was, therefore, limited to the single question, whether the title of the plaintiff under the patent was affected by knowledge of the patentees, at the time of their application for a patent, that a lode or vein existed at the place in controversy within their placer claim. The question as tried was one of knowledge on the part of the placer patentees, or whether the premises in dispute were a known vein or lode, within the exception of the patent.

Section 2333 of the Revised Statutes, under which the patent issued, is as follows:

"Where the same person, association, or corporation is in possession of a placer claim, and also a vein or lode included within the boundaries thereof, application shall be made for a patent for the placer claim, with the statement that it includes such vein or lode, and in such case a patent shall issue for the placer claim, subject to the provisions of this chapter, including such vein or lode, upon the payment of five dollars per acre for such vein or lode claim, and twenty-five feet of surface on each side thereof. The remainder of the placer claim, or any placer claim not embracing any vein or lode claim, shall be paid for at the rate of two dollars and fifty cents per acre, together with all costs of proceedings; and where a vein or lode, such as is described in section twenty-three hundred and twenty, is known to exist within the boundaries of a placer claim, an application for a patent for such placer claim which does not include an application for the vein or lode claim shall be construed as a conclusive declaration that the claimant of the placer claim has no right of possession of the vein or lode claim; but where the existence of a vein or lode in a placer claim is not known, a patent for the placer claim shall convey all valuable mineral and other deposits within the boundaries thereof."

The evidence offered by the defendants, as to the knowledge of the patentees, was of a vague, uncertain, and unsatisfactory character. It consisted principally of impressions, beliefs, and inferences on the subject, drawn from loose statements made, or theories advanced by the patentees, or persons alleged to have been interested in the claim, or the supposed motives of their conduct. The court, among other things, instructed the jury that it was unnecessary to state "what circumstances may be sufficient to affect a patentee with knowledge as declared by the statute, for if in any case it appear that an application for a patent is made with *intent* to acquire title to a lode or vein which *may* exist in the ground beneath the surface of a placer claim, it is believed a patent issued upon such application cannot operate to convey such

lode or vein ; " and that " that intention could be formed only upon investigation as to the character of the ground, and the belief as to the existence of a valuable lode therein, which would amount to knowledge under the statute."

To this instruction the plaintiff excepted.

The jury found for the defendants, and upon their verdict judgment was entered, which is brought to this court for review.

*Mr. L. S. Dixon* and *Mr. Frank W. Owers* for plaintiff in error.

*Mr. T. M. Paterson, Mr. C. S. Thomas, Mr. R. S. Morrison,* and *Mr. G. W. Kretzinger* for defendants in error.

Mr. Justice Field, after stating the case, delivered the opinion of the court.

As seen by the statement of the case, the patent of the United States to Wells and Moyer of their placer claim, within the surface lines of which, drawn down vertically, the premises in controversy are situated, contains several conditions, and among others that the premises may be entered by the proprietors of any vein or lode of quartz, or other rock in place, bearing gold, silver or other valuable deposits, for the purpose of extracting and removing the ore from them, should they be found to penetrate into the premises. This exception is founded upon the statute, which provides, that the owners of any mineral vein, lode, or ledge situated on the public domain, the location of which was made after the 10th day of May, 1872, should have the exclusive right of possession and enjoyment, not only of all the surface included within the lines of their locations, but also the exclusive right of possession and enjoyment " of all veins, lodes, and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines extended downward vertically, although such veins, lodes, or ledges may so far depart from a perpendicular in their course downward as to extend outside the vertical side lines of such surface locations." § 2322. The defendant

Reynolds set up in his answer, that he is the owner of the Crown Point mining lode and the Pinnacle mining lode, adjoining the placer claim of the plaintiff, and that he, and the defendant Morrisey as his licensee, entered the premises in controversy by following the veins of their lodes from their outcropping within their surface lines. But on the trial the defendants disclaimed any right to the demanded premises under any apex or outcroppings of their lodes within the surface lines thereof, and rested their defence upon another exception of the patent, namely, that if any vein or lode of quartz, or other rock in place, bearing gold, silver, or other valuable deposit, was claimed or known to exist within the premises described at the date of the patent, the same was excluded from the grant. This exception is founded upon and limited by the statute which we shall presently consider.

When this case was formerly before us, it was held that if a lode or vein of gold or silver was *known to exist* within a placer claim at the time the application for the patent was made, the patentee could not recover its possession even as against a mere intruder. The patentee having no title to such lode or vein by reason of its exception from his patent under the statute, could not enforce any legal right to it against any one, being bound to rely upon the strength of his own title and not the weakness of his adversary's. The defendants, therefore, on this trial, placed their defence upon this exception, and the question for determination was, whether the lode or vein in question was *known to exist* at the time the application for a patent was made.

In anticipation of this defence, and to establish title to the demanded premises, if not sufficiently covered by the patent for the placer claim, the plaintiff offered in evidence a patent of the United States for the Rock and Dome lode mining claims, and a deed of them to the plaintiff from the patentees, for the purpose of showing that the lode which, since the issue of the patent of the placer claim, has been ascertained to dip into and extend within the boundaries of that claim, has its apex or outcrop within the boundaries of these lode claims; but the court refused to admit the patent, and the plaintiff

excepted. In thus ruling there was plain error. If the fact thus sought to be established existed, it would force the defendants from their position of intruders without title, and compel them to show prior title in themselves to the premises or to surrender them to the plaintiff.

It is not readily perceived on what ground the ruling of the court rested. The plaintiff did not base its action upon any particular source of title; it simply averred that it was the owner and possessed of certain described mining ground, from a portion of which the defendants had ousted it and wrongfully withheld the possession. The patent was evidence of the grant of the whole of the described premises, if no portion was excepted from its operation either in terms or by force of the statute. But if any portion was excepted for any cause, the duty fell on the plaintiff to furnish title to such excepted portion from some other source, and that, the court, by its ruling, refused to permit the plaintiff to do.

The exception in the patent from its grant of any vein or lode of quartz, or other rock in place, bearing gold, silver, cinnabar, lead, tin, or other valuable deposit, if "claimed or known to exist," is in terms broader than the language of § 2333, under which the patent was issued. The statute does not except veins or lodes "*claimed* or known to exist," but only such as are "known to exist," and it fixes the time at which such knowledge is to be had as that of the application for the patent, and not that of the date of the patent, to take the vein or lode out of its grant. Section 2333, as stated by this court when the case was first here, makes provision for three distinct classes of cases :

1. When one applies for a placer patent, who is at the time in the possession of a vein or lode included within its boundaries, he must state the fact, and then, on payment of the sum required for a vein claim and twenty-five feet on each side of it at $5.00 an acre, and $2.50 an acre for the placer claim, a patent will issue to him covering both claim and lode.

2. Where a vein or lode, such as is described in a previous section, is known to exist at the time within the boundaries of the placer claim, the application for a patent therefor, which

does not also include an application for the vein or lode, will be construed as a conclusive declaration that the claimant of the placer claim has no right of possession to the vein or lode.

3. Where the existence of a vein or lode in a placer claim is not known at the time of the application for a patent, that instrument will convey all valuable mineral and other deposits within its boundaries.

The question under this section, which must control and limit any conflicting exception expressed in the patent, is, when can it be said that a vein or lode is "known to exist" within the boundaries of a placer claim for which a patent is sought. The language of the statute appears to be sufficiently intelligible in a general sense; and yet it becomes difficult of interpretation when applied to the determination of rights asserted to such veins or lodes from the possession, or absence, of such knowledge at the time application is made for the patent. At the outset, as stated when the case was here before, the inquiry must be whether the alleged knowledge must be traced to the applicant, or whether it is sufficient that the existence of the vein or lode was at the time of the application generally known. If general knowledge of such existence should be held sufficient, the inquiry would follow as to what would constitute such general knowledge, so as to create an exception to the grant, notwithstanding the ignorance of the patentee. Such suggestions indicate the difficulties of some of the questions which may arise in the application of the statute.

The court below instructed the jury that it was unnecessary to declare what circumstances might be sufficient to affect a patentee with knowledge as prescribed by the statute, "for, if, in any case, it appear that an application for a patent is made with *intent* to acquire title to a lode or vein which *may* exist in the ground beneath the surface of a placer claim, it is believed a patent issued upon such application cannot operate to convey such lode or vein;" and further, that "that intention could be formed only upon investigation as to the character of the ground, and the belief as to the existence of a valuable lode therein, which would amount to knowledge under the statute."

This instruction is plainly erroneous. The statute speaks of acquiring a patent with a knowledge of the existence of a vein or lode within the boundaries of the claim for which a patent is sought, not the effect of the *intent* of the party to acquire a lode which may or may not exist, of which he has no knowledge. Nor does it render belief, after examination, in the existence of a lode, knowledge of the fact.

There may be difficulty in determining whether such knowledge in a given case was had, but between mere belief and knowledge there is a wide difference. The court could not make them synonymous by its charge and thus in effect incorporate new terms into the statute.

Knowledge of the existence of a lode or vein within the boundaries of a placer claim may be obtained from its outcrop within such boundaries; or from the developments of the placer claim previous to the application for a patent; or by the tracing of the vein from another lode; or perhaps from the general condition and developments of mining ground adjoining the placer claim. It may also be obtained from the information of others who have made the necessary explorations to ascertain the fact, and perhaps in other ways. We do not speak of the sufficiency of any of these modes, but mention them merely to show that such knowledge may be had without making hopes and beliefs on the subject its equivalent. As well observed by the court, when the case was here before, it is better that all questions as to what kind of evidence is necessary, and we may add sufficient, to prove the knowledge required by the statute, should be settled as they arise.

For the errors mentioned,

*The judgment must be reversed and the case remanded for a new trial.*